THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANCISCO GARCIA,<br><br>Plaintiff,<br><br>v.<br><br>VIPIN SHAH, M.D., WEXFORD HEALTH SOURCES, INC., KUL SOOD, M.D.,<br><br>Defendants. | Case No. 23-cv-1104<br><br>Judge April M. Perry |

## MEMORANDUM OPINION AND ORDER

Before this Court is Plaintiff's motion for leave to file a Second Amended Complaint [75]. For the reasons stated herein, the Court grants Plaintiff's motion.

Plaintiff's First Amended Complaint alleged violations of 42 U.S.C. § 1983 arising from what Plaintiff alleges was insufficient medical care following his beating by prisoners while incarcerated at the Kane County Adult Justice Center. Doc. 6. Specifically, Plaintiff alleged that following his beating he was examined by a nurse who returned him to the general population after treating a gash under his right eye, nose-bleed, and forehead bleeding and swelling. *Id.* at ¶ 26-29. Subsequently, Plaintiff was examined by Defendants Dr. Shah and Dr. Sood, who were employed by Wexford Health Services as on-site physicians for the jail where Garcia was detained. *Id.* ¶ 14. Plaintiff alleged in Counts Three through Five deliberate indifference to medical needs for failure to properly examine, diagnose, treat, manage, order proper tests, and failure to timely consult with specialists.[1] *Id.* ¶¶ 53-58. Plaintiff alleged in Counts Six through Nine negligent medical treatment against Defendants Dr. Shah and Dr. Sood, and Respondeat Superior claims against Wexford Health Services. *Id.* at ¶¶ 59-80. Plaintiff now seeks to add an additional count alleging "that the Wexford's agent, an unknown healthcare provider, on February 23, 2022 failed to contact the Wexford doctor who was on call and failed to refer Plaintiff to an outside consultant or emergency department." Doc. 75 at 1. Although Plaintiff does not submit a proposed Second Amended Complaint, Plaintiff claims that the new count would rely upon "the allegations…set forth in the First Amended Complaint under Count III," substituting "Negligence" for "Deliberate Indifference." *Id.*

Plaintiff claims that no new facts would be alleged in the Second Amended Complaint and that no additional discovery would be required. Doc. 75 at 3. Specifically, Plaintiff notes that Plaintiff's expert has opined that the healthcare provider who initially saw Plaintiff violated the

---

[1] Counts One and Two were against Kane County defendants and have since been dismissed. Doc. 54.

standard of care by not communicating with the on call medical doctor and not referring the patient to the emergency department, which violated both the standard of care and Wexford's policies. Doc. 75 at 2; Doc. 75-4 at 22 (Plaintiff's expert Dr. Al-Heeti's report states: "Both [defendant doctors] testified that there was an altercation and if an inmate was injured, they should have been called by the nurse on duty…Wexford health violated the above policies described by Dr. Shah by either inappropriately medically clearing Mr. Garcia or by failing to have him properly medically examined."). Plaintiff further notes that Defendants' expert opined that the nurse acted reasonably. Doc. 75 at 2; Doc. 75-6 at 4 (Defendant's expert Dr. Tubbs' report states: "Based upon the observations and complaints noted by Nurse Vela, I am of the opinion that a medical emergency did not exist when she evaluated Garcia on February 23, 2022. Moreover, she acted reasonably by cleaning the wounds, providing pain medication, ice, and scheduling Garcia to be seen by the onsite medical doctor the next day.")

      Defendants respond that Plaintiff's motion should be denied because the proposed amendment is untimely, unduly prejudicial, and futile. Doc. 90. Defendants note that all discovery has closed, and they have already expended resources briefing a motion for summary judgment. No expert opinions were sought regarding the proper standard of care for nurses, and the proposed amendment would bring into issue the appropriateness of the nurse's care in a way that has not previously been raised. *Id.* at 11. Although the expert opinions may mention a nurse, Defendants argue that the only opinions offered were those about nurse training and whether the doctors deviated from the standard of care in providing such training. *Id.* Moreover, given that the nurse is still unknown, Defendants argue that additional discovery would be required to prove an agency relationship between the nurse and Wexford. *Id.* at 10. Defendants further point out that no good cause exists for the delay in properly pleading the claims.

      Plaintiff replies that the nurse's agency has already been established through deposition testimony. Doc. 91 at 2. Plaintiff further argues that the negligence claim is based entirely upon the nurse's failure to follow Wexford's procedure and protocols which required the nurse to reach out to the doctor, and therefore no expert opinions are needed. Doc. 91 at 4 ("The negligence of the nurse on February 23, 2022 was this person's failure to follow Wexford's procedure and protocol to communicate with the medical director who was on call…").

      Plaintiff's arguments that no additional discovery would be required by the amendment are not compelling. The Court has found no case that stands for the proposition that breach of a hospital's customs or policies, alone, is determinative of the standard of care for a negligence action. In fact, the single case cited by Plaintiff says otherwise. *Edelin v. Westlake Community Hosp*. 510 N.E.2d 958, 961 (Ill. App. Ct. 1987) (noting that "[o]ne type of information which aids a jury in determining a hospital's duty to a patient is evidence of a hospital's customs or policies," and also that "these policies are not solely determinative of the standard of care…"). Nor is the Court persuaded by Plaintiff's argument that no nursing experts are required because doctors can establish the standard of care for nurses when the question is whether a doctor should have been called. Plaintiff may be correct that a nursing expert's opinion is not legally required to state a claim, but that does not mean that Defendants should be denied the opportunity to defend the nurse's conduct through an expert in nursing. And that is especially true when the

Defendants had no notice that this particular legal theory was in play during the time they solicited their own expert opinion and deposed Plaintiff's expert.

Nor has Plaintiff established conclusively that Wexford even had the "procedure" upon which Plaintiff depends to prove negligence. Specifically, the procedure Plaintiff lays out is when an altercation takes place "an inmate [should] be seen by the nurse and the doctor." Doc. 91 at 4-5. Here, it is undisputed that the patient was seen by a nurse and doctor – just not at the same visit. In establishing Wexford's so-called policy of a same-day visit requirement Plaintiff relies on Dr. Shah and Dr. Sood. Suffice it to say, their testimony about a same-day visit with the doctor being required is at best inconsistent, and at worst does not stand for what Plaintiff claims at all. Doc. 75-5 at 6 (Dr. Shah's testimony was, in part: "Q: And Dr. Sood said the protocol was you would see the patient the same day. A: No. That's not the protocol. The protocol said I will see as soon as possible. We are not there 24 hours.");[2] Doc. 91-1 at 11 (Dr. Sood's testimony was, in part: "Q: Okay, Now, how is it that the decision is made in February 2022 whether a doctor should see the patient on February 2022 versus just the nurse? A: In Kane County it depend what kind of situation. If it is an altercation they have to be seen by MD *or* the nursing staff on call" (emphasis added); Dr. Sood later indicated that a doctor and nurse both had to be seen).

In short: the Court believes that allowing the addition of the negligence claim against Wexford for the conduct of the unknown nurse would require discovery to be re-opened both with respect to Wexford's policies about doctor-nurse communication and the proper standard of care for a nurse presented with these circumstances. Moreover, there may also be more factual development needed regarding who employed the unknown nurse.

District courts are to "freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The Supreme Court has interpreted this rule to require a district court to allow amendment unless there is a good reason – futility, undue delay, undue prejudice, or bad faith – for denying leave to amend." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357-58 (7th Cir. 2015) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)). Motions to amend after summary judgment has been filed are disfavored because "[t]here must be a point at which a plaintiff makes a commitment to the theory of its case" and reopening discovery to address a new theory of the case only after a plaintiff has decided that they will lose at summary judgment is frequently unduly prejudicial. *Johnson v. Methodist Medical Center of Illinois*, 10 F.3d 1300, 1304 (7th Cir. 1993). That said, the Rules of Civil Procedure do contemplate late amendments – including even after trial has begun. *See* Fed. R. Civ. P. 15(b). And it is hard to make a finding of undue prejudice when the factual allegations in the complaint fairly raise the issues and Plaintiff later seeks to add a statutory basis supporting legal liability. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014). Delay alone is an insufficient basis to deny leave to amend the complaint, "rather, the degree of prejudice to the opposing party is a significant factor in determining whether the lateness of the request ought to bar filing." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004) (reversing district court's denial of leave to amend even though eight months had passed after first amended complaint was dismissed). Moreover,

---

[2] The Court is unclear how Dr. Shah's testimony of "No. That's not the protocol" can plausibly be argued by Plaintiff as "confirm[ing] the procedure described by Dr. Sood." Doc. 91 at 5.

the fact that Plaintiff's theory of liability ultimately may not succeed does not equate to futility. Rather, "[a]n amendment is futile if the added claim would not survive a motion for summary judgment." *See Bethany Pharmacal Co., Inc., v. QVC, Inc*., 241 F.3d 854, 861 (7th Cir. 2001) (noting the standard for futility when an amendment is attempted at the time of summary judgment).

While the Court appreciates Defendants' frustration with Plaintiff choosing not to file a request to amend until after Defendants filed their motion for summary judgment, the Court still finds that justice counsels in favor of allowing the amendment. The facts of this case – which were originally alleged in the complaint, fully explored in discovery, and opined upon by the medical experts – have not changed. The addition of a negligence claim involving the nurse's failure to report her findings to the doctor on call is relatively discrete and will not require substantial discovery from witnesses outside of Defendants' control, and therefore the Court believes that any prejudice to Defendants can be mitigated. Because the new count relies upon events that occurred before Drs. Shah and Sood were notified, those Defendants will not be prejudiced at all by the addition of the new charge. Moreover, the Court does not believe that an amendment is futile. Although Plaintiff refers to an "unknown nurse," it does seem to have been admitted by one of the Defendants that the nurses at Kane County Jail were employees of Defendant Wexford. Additionally, Plaintiff's medical expert has already opined that the behavior of the nurse was unreasonable. Therefore, the Court cannot find at this time that Plaintiff would lose on its negligence theory at summary judgment. Doc. 91-1 at 4, 10. Because the goal of pleadings "is to decide cases fairly on their merits, not to debate finer points of pleading where opponents have fair notice of the claim," *Bausch v. Stryker Corp*., 630 F.3d 546, 562 (7th Cir. 2010), this amendment is appropriate.[3]

Plaintiff is directed to file his Second Amended Complaint adding only the count for negligence with the allegations that had been set forth in the First Amended Complaint for Count Three (as requested in Plaintiff's motion, Doc. 75) by January 10, 2025. Because Plaintiff has averred that no additional discovery is necessary to support Plaintiff's claim, Plaintiff will not be allowed to conduct any additional discovery. To the extent Defendants would like to conduct additional discovery or seek additional expert opinions for the limited purpose of rebutting the new allegations, they will be permitted to do so upon written request to the Court. Similarly, to the extent Defendants would like to supplement their motion for summary judgment to address the new allegations, they will be permitted to do so. Defendants are asked to file by January 17, 2025 a proposed schedule for answering or otherwise pleading, any additional discovery, and summary judgment briefing.

---

[3] The Court has considered and rejected Defendant's argument that 735 ILCS 5/2-622 renders the addition of the negligence claim futile. The purpose of 5/2-622 is "a pleading requirement designed to reduce frivolous lawsuits" and not "a substantive defense forever barring plaintiffs who initially fail to comply with its terms." *McCastle v. Mitchell B. Sheinkop, M.D., Ltd*. 520 N.E.2d 293, 296 (Ill. 1987). Even if the affidavit of the medical expert had to encompass every cause of action brought by the plaintiff, a question of Illinois law that the parties have not briefed, at most the remedy would be a dismissal without prejudice and with leave to re-plead. *See id.*

Entered: 1/7/2025

*April M Perry*

United States District Judge